IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No 19-cv-03715-NRN

KELLY HARRIS,

Plaintiff,

v.

ANDREW SAUL, Commissioner of Social Security,

Defendant.

## OPINION AND ORDER

**N. Reid Neureiter**
**United States Magistrate Judge**

The government determined that Plaintiff Kelly Harris was not disabled for purposes of the Social Security Act. AR[1] 165. Ms. Harris has asked this Court to review that decision. The Court has jurisdiction under 42 U.S.C. § 405(g), and both parties have agreed to have this case decided by a United States Magistrate Judge under 28 U.S.C. § 636(c). Dkt. #12.

## Standard of Review

In Social Security appeals, the Court reviews the decision of the administrative law judge ("ALJ") to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *See Pisciotta v. Astrue,* 500 F.3d 1074, 1075 (10th Cir. 2007).

---

[1] All references to "AR" refer to the sequentially numbered Administrative Record filed in this case. Dkt. ##11, and 11-1 through 11-14.

"Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Raymond v. Astrue*, 621 F.3d 1269, 1271–72 (10th Cir. 2009) (internal quotation marks omitted). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The Court cannot reweigh the evidence or its credibility. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

## Background

At the second step of the Commissioner's five-step sequence for making determinations,[2] the ALJ found that Ms. Harris had the severe impairments of degenerative disc disease and endometriosis. AR 153. Ms. Harris's additional impairment of diabetes mellitus, type II, was not severe. AR 153–54. The ALJ then stated that Ms. Harris's "medically determinable mental impairments of anxiety disorder and attention deficit hyperactivity disorder, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." AR 154. In making this finding, the ALJ considered that four areas of mental functioning

---

[2] The Social Security Administration uses a five-step sequential process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988.) The claimant has the burden of proof through step four; the Social Security Administration has the burden of proof at step five. *Lax*, 489 F.3d at 1084.

known as the "paragraph B" criteria. She determined that Ms. Harris has no limitations in three of the areas (understanding, remembering, or applying information; interacting with others; and adapting or managing oneself) and a mild limitation in the functional area of concentrating, persisting, or maintaining pace. AR 154–55.

The ALJ determined at step three that Ms. Harris does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in the regulations. AR 155. Because she concluded that Ms. Harris did not have an impairment or combination of impairments that meets the severity of the listed impairments, the ALJ found that Ms. Harris has the residual functional capacity ("RFC") to perform "medium work as defined in CFR 416.967(c), except that the claimant can only occasionally climb, stoop, and crawl." *Id.*

The ALJ found that Ms. Harris is capable of performing past relevant work as a house cleaner and taxi driver. AR 163. In the alternative, the ALJ found that, considering Ms. Harris's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that she can perform. AR 164. Accordingly, Ms. Harris was deemed not to have been under a disability from June 9, 2017, through January 24, 2019, the date of the decision. AR 165.

## **Analysis**

This case turns on the ALJ's evaluation of medical opinions.[3] Effective March 27, 2017, the regulations changed the procedures and standards for evaluating evidence, including medical source opinions. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Because Plaintiff filed her claim in June 2017, the ALJ correctly applied the revised regulations.

Under the old regulations, the opinions of treating sources are generally entitled to more weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Treating-source opinions are given "controlling weight" when they are "well supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent" with other substantial evidence in the record. *Id.* §§ 404.1527(c)(2), 416.927(c)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

The new regulations set forth in 20 C.F.R. §§ 404.1520c and 416.920c abrogate the treating physician rule for claims filed on or after March 27, 2017. The Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner will consider the persuasiveness of each medical source's opinions using five factors: (1)

---

[3] Because this issue is dispositive, the Court will not address Ms. Harris's other arguments for reversal and remand.

supportability; (2) consistency; (3) relationship with the claimant (which encompasses the length of treatment relationship, frequency of examinations; purpose and extent of treatment relationship, and examining relationship); (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The most important factors in evaluating persuasiveness are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). For supportability, "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." *Vellone v. Saul*, 120CV00261RAKHP, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)). Consistency, on the other hand, "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Id.* (citing 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2)). The ALJ must explain her approach with respect to these factors when considering a medical opinion, but she is not required to expound on the remaining three unless the ALJ finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. *Id.* §§ 404.1520c(b)(2)–(3), 416.920c(b)(2)–(3).

Also relevant is the definition of "prior administrative medical finding" set forth in new regulations:

> Prior administrative medical finding. A prior administrative medical finding is a finding, other than the ultimate determination about

>whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 404.900) in your current claim based on their review of the evidence in your case record, such as:
>
>(i) The existence and severity of your impairment(s);
>
>(ii) The existence and severity of your symptoms;
>
>(iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1;
>
>(iv) Your residual functional capacity;
>
>(v) Whether your impairment(s) meets the duration requirement; and
>
>(vi) How failure to follow prescribed treatment (see § 404.1530) and drug addiction and alcoholism (see § 404.1535) relate to your claim.

20 C.F.R. §§ 404.1513(a)(5), 416.913(a)(5).

In this case, the ALJ found the prior administrative medical findings of Kim Heaton, M.D., and Lynn Johnson, Ph.D., persuasive. AR 161. The former opined that Ms. Harris is capable of medium work with certain limitations, the latter that Ms. Harris does not have a severe mental impairment. *Id.* The ALJ stated that these opinions are supported by their explanations of the objective medical evidence and consistent with the examination findings in the record.

In contrast, the ALJ did not find that medical opinions of Gregory Smith, D.O., to be persuasive. Dr. Smith was Ms. Harris's primary care physician beginning in June 2017. The ALJ summarized his opinions as follows:

>1. He finds that the claimant has been or will be totally and permanently disabled to the extent she is unable to work full time and any job due to endometriosis, anxiety, and lower back pain;

2. The claimant has marked limitations in her ability to understand, remember, or carry out instructions and interact with others;
3. The claimant would be expected to miss work about three times per month as a result of their impairments or treatment;
4. The claimant can occasionally lift and carry up to 5 pounds;
5. The claimant can sit for two hours at one time and four hours total throughout an eight-hour workday;
6. The claimant can stand for one hour total throughout an eight-hour workday;
7. The claimant can walk for one hour total throughout an eight-hour workday;
8. The claimant requires the use of a cane to ambulate, otherwise the claimant could only walk 300 feet;
9. The claimant can only occasionally reach, handle, finder, feel, push, and pull bilaterally;
10. The claimant can only occasionally use her feet in operation of foot controls;
11. The claimant can never climb stairs and ramps, climb ladders or scaffolds, balance, stoop, kneel, crouch, or crawl;
12. The claimant can occasionally work at unprotected heights; around moving mechanical parts; operate a motor vehicle; and be exposed to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, and vibrations; and
13. The claimant will need to take one to two unscheduled breaks per day lasting 30 minutes each where she would be permitted to recline.

AR 162. The ALJ rejected these opinions "because they are not bolstered by any supporting explanation and they are inconsistent with the majority of the examination findings contained in the record." AR 162.

Ms. Harris contends that the ALJ's conclusions on the persuasiveness of the relevant medical opinions were arrived at in error. First, she claims that the treating source rule, notwithstanding its explicit rejection in the revised regulations, is still good law as to claims filed after March 17, 2017. This is a dubious proposition. Claims filed on or after March 27, 2017 are subject to new regulations set forth in 20 C.F.R. §§ 404.1520c and 416.920c, and "[w]hat is

clear under the new regulations is that ALJs are to focus on how persuasive a medical source's opinions are and not on how much weight they should be given." *Terri Ann B. v. Saul*, No. CV 20-1077-JWL, 2020 WL 7316099, at *6 (D. Kan. Dec. 11, 2020). Ms. Harris has not shown that the revised regulations are so arbitrary and capricious as to be outside the scope of the Commissioner's rule making authority and therefore not binding on the Court. *See Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (new regulations are valid and binding on court even though they are at variance with prior circuit precedent).

However, the Court need not reach this issue because even under the new regulations, the ALJ's decision was manifestly deficient. The ALJ stated that "[w]ith respect to mental health, Dr. Smith is a doctor of orthopedics. As such, Dr. Smith lacks the relevant clinical specialization necessary to persuasively evaluate the claimant's mental limitations." AR 163. This is incorrect. "D.O." does not stand for "doctor of orthopedics" and Dr. Smith does not "specialize" in this area. Rather, Dr. Smith is a Doctor of Osteopathic Medicine. *See* Am. Osteopathic Assoc., What is a DO?, https://osteopathic.org/what-is-osteopathic-medicine/what-is-a-do/ (last visited February 4, 2021) (explaining that "Doctors of Osteopathic Medicine, or DOs, are fully licensed physicians who practice in all areas of medicine" using "a unique whole-person approach to help prevent illness and injury"). The regulations do not distinguish between medical and osteopathic doctors; both are licensed physicians who are acceptable medical sources. *See* 20 CFR § 404.1502(a)(1); s*ee also Sloan v. Astrue*, 499 F.3d 883 (8th Cir. 2007) (reciting facts of case where Social Security benefits applicant

had visited her primary-care physician, "Ben Gaumer, D.O., an osteopath," from whom she had received a disability opinion, and also seen another osteopath at the request of the Disability Determination Service). The record does not support the ALJ's conclusion that Dr. Smith was opining outside his area of expertise.

The Commissioner argues reversing on this basis would amount to "nitpick[ing] some stray comments by the ALJ" that do not "meaningfully undermine the ALJ's ultimate conclusion that Dr. Smith's opinion was not supported and not consistent" with the record. The Court does not agree. This was no "stray comment." The ALJ stated, wrongly, that Dr. Smith, as a "doctor of orthopedics," could not "persuasively evaluate" Ms. Harris's mental health. This goes to the heart of the ALJ's responsibilities in weighing medical source opinions under the revised regulations. If the ALJ believed, as she stated in her decision, that Dr. Smith was a bone and ligament specialist improperly opining on mental health issues, such a belief would have tainted the ALJ's entire view of Dr. Smith's opinion.

To be sure, the ALJ goes on to state that "[b]eyond Dr. Smith's lack of relevant specialization," his mental health opinions are inconsistent with "the vast body of objective examination findings demonstrating the claimant to have no psychiatric defects." AR 163. But the Court cannot divorce the ALJ's finding that Dr. Smith's opinions are inconsistent with the record from her erroneous discounting of Dr. Smith's qualifications. The fact is that the ALJ found Dr. Smith's opinion to be unpersuasive based, at least in part, on an undeniable

mistake of fact. Under these circumstances, it cannot be said that the correct legal standards, as set forth in the revised regulations, were applied.

## Conclusion

For the reasons set forth above, the Commissioner's decision is **REVERSED** and **REMANDED** for the ALJ to conduct additional proceedings consistent with this opinion. Specifically, the ALJ should reconsider Dr. Smith's opinion, taking care to view it as a proper medical opinion by a doctor appropriately qualified to opine on issues of mental health.

Dated this 5th day of February 2021.

BY THE COURT:

N. Reid Neureiter
United States Magistrate Judge